Derek I. Allmon,

      Plaintiff,

v.            Civil Action 08-0314 (RMC)

Bureau Of Prisons, Et al.,

      Defendants.

**RECEIVED**

JUN 2 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### Plaintiff's Motion To Hold In Abeyance Defendants' Motion

Plaintiff, Derek Allmon, pro se of record, respectfully moves this Court, to grant Plaintiff's Motion to Hold in Abeyance the pending Motion to Dismiss and/or for Summary Judgement by Defendants, to allow Plaintiff to file a motion to amend the complaint and engage in discovery, and state in support the following:

1. On or about June 11, 2008, Plaintiff received service of the defendants

(1)

motions and accompanying memorandum.

2. Summary Judgement is only warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgement as a matter of law." Fed. R. Civ. P. 56(c). However, the Court has discretion to hold in abeyance defendants' motion for summary judgement, and order a continuance to enable discovery. "The judge does, however, have discretion to postpone ruling on a defendant's summary judgement motion if the plaintiff needs discovery to explore "facts essential to justify the party's opposition.' Rule 56(f)."

3. The holding of the motion for summary judgement in abeyance or dismissing it until Plaintiff has had an opportunity to engage in discovery would not undue prejudice the defendants.

4. The Court shall treat Defendants' motion in its entirety as a motion for summary judgement.

5. Though Plaintiff is not educated in law and research, and his March 13, 2008, motion to appoint counsel has yet to be ruled on, he is making a diligent effort to comply with the rules of the court and effectively state and argue his claims.

6. Under the circumstances, without the resources that assist most litigants, Plaintiff's pro se status, incompetence and restrictions make it "virtually impossible" for him to do complete discovery, depositions and obtain experts. And a prisoner, unversed in the law and the methods of legal research, will need more time or more assis-tance than the trained lawyer explor-ing his case.

7. In Plaintiff's original Complaint he he clearly stated that several of his

claims has occurred beginning in 2005 till present. But defendants' counsel conveniently omitted it in his motion.

8. Plaintiff is presently still becoming aware of newly discovered ERRONEOUS information maintained in his inmate files. Information other than that he had reason to believe or suspectfully gain knowledge of in June 2006.

9. Plaintiff's reference to incidents from his prior incarceration of 1991 - 1998, is merely to show the BOP's pattern of maintaining and using un- substantiated information, to repeatedly make adverse decisions against him.

## CONCLUSION

According to the principles of "fun- damental justice," this Court should grant the relief Plaintiff seeks. And for the reasons stated above, Plaintiff respec- tively requests the Court to grant his

(4)

motion to hold in abeyance or to dis-
miss without prejudice defendants' mo-
tion for summary judgement, to open
discovery and file an amended com-
plaint. If this motion is unlikely denied,
Plaintiff is asking at least 30 days
to file a response to defendants' motion.

Respectfully submitted,

D. Isaac Allmon
Pro Se Plaintiff

D. Isaac Allmon
P.O. Box 8500
Florence, Co. 81226

(5)

Derek I. Allmon,

       Plaintiff,

v.              Civil Action 08-0314 (RMC)

Bureau Of Prisons, et al.,

       Defendants.


## Response To Defendants Statement Of Undisputed Facts

Comes now plaintiff, Derek Allmon, pro se of record, and for his response to defendants' statement of undisputed facts in support of their motion for summary judgement, states as follows:

1. Plaintiff avers that the Bureau of Prisons (BOP) has relied on erroneous information in determining many adverse decisions and his custody and security classification.

(1)

2. The United States Court of Appeals for the District of Columbia, has held that Regulations governing the BOP does not exempt the agency's records from Section 552a(e)(5) of the Privacy Act. See, e.g., Sellers v. BOP, 294 U.S. App. D.C. 361.

3. The BOP also relies upon an FOIA exempt section within Plaintiff's inmate files, which he is not allowed to review, in helping to determine his custody and security classification.

4. BOP staff utilized erroneous information provided by the U.S. Marshals Services, U.S. Attorney Office and U.S. Probation Office, to decide Plaintiff's custody and designation.

5. Nowhere in Plaintiff's original complaint did he make reference to any Central Inmate Files. Because it is a known fact that the BOP maintains different systems of records. And without discovery Plaintiff has no way of knowing

(2)

which system of records are being used.
Nor factually what information was pro-
vided by which agency.

6. Plaintiff hereby dispute, challenge
and avers that several statements
alleged against him by the defendants
are incorrect and untrue.

Respectfully submitted,

Derek I. Allmon
#12579-076

(3)

Derek I. Allmon,

    Plaintiff,

  v.        Civil Action 08-0314 (RMC)

Bureau Of Prisons, et al.,

    Defendants.

Response To Theresa Montoya's Declaration

1. Though it is true that Plaintiff was unjustly convicted on all charges of a malicious prosecution, he is steadfast in maintaining his innocence on several of those charges and erroneous allegations. See, e.g., partial sentencing transcripts of erroneous information in files.

2. According to Montoya's statement of the type of inmates designated to and housed at the ADX, Plaintiff does not meet said criteria. Especially absent the fabricated, unsubstantial information utilized by the BOP to appease AUSA Duke.

3. It is very clear that the BOP ~~has~~ has discriminated against Plaintiff. Because there are hundreds of inmates within the BOP, with criminal and institutional records much worse than the plaintiff's who has NEVER been housed at ADX Florence.

4. BOP's Rebecca Tamez rejected AUSA Jane Duke and Judge William Wilson's original request to house Plaintiff at ADX. See, letters supplied by defendants.

5. Plaintiff NEVER ordered Rodney Floyd or any other inmate to attack anyone. Nor has ever threatened a U.S. attorney or agents in any manner. Therefore, the Court shall order the BOP to produce documentation, of how their internal investigation came to such a unsubstantiated conclusion.

6. Results of quick and unfair conclusions arrive when bias individuals choose not to think, due to fear of becoming fair and impartial.

(2)

7. Plaintiff also did not send any threatening communications to no one in or about April 2007. He only mailed copies of a legal news article to his own family members, attorney Dale West and the work place of Carl Hyde. Hyde is an individual whom is not prohibited from corresponse. Thus, once again rendering Montova's fabricated statement incorrect. Please review all enclosed exhibits and dated documentations.

8. Plaintiff was never given notice, opportunity to refute, never charged nor found guilty of violating any administrative rule or law pertaining to all these BOP allegations of threats and assaults to others.

9. To enter into Plaintiff's files, maintain and utilize erroneous information to make adverse decisions against him, and transfer him to "supermax" without notice and opportunity to be heard, is a violation of the Privacy Act and 28 U.S. C. § 1331, i.e. "right to due process."

(3)

10. Montoya's statement that Plaintiff demonstrated poor adjustment, lack of participation and failed to secure a job assignment, is false.

11. In USP Terre Haute staff does not require inmates to have jobs due to lack of job availability per the number of inmates. And staff specifically inform inmates on the job absence and availability.

12. Documentation of Plaintiff's custody classification form prior to the BOP conspiracy, to an improper ADX transfer list as average program participant and good living skills, with receipt of making financial payments. Which this assessment included the incident reports on three-way phone calls.

13. While incarcerated within several BOP facilities, Plaintiff received incident reports abusing the phone for purposes of three-way calls. Which if such misconduct justify designation to

(4)

ADX a vast of federal inmates would be housed here.

14. Plaintiff had the exact same underlying criminal offense and incident reports after arriving at ADX as he did prior to transfer. Thus showing transfer was discriminatory and for improper purposes.

15. Theresa Montoya has declared she is a BOP employee, and has made several false allegations against the plaintiff. which demonstrates and supports Plaintiff's assertion of the BOP's normal systematic pattern of utilizing fabricated information.

16. Due to all the alleged information via declaration of Montoya, the case must proceed to take discovery prior to any court ruling on defendants' motion.

Respectfully,

Derek Allmon
Derek Allmon

(5)

Certificate Of Service

I hereby certify that on this 23rd day June 2008, a true and correct copy of the above and foregoing motion has been served upon the United States Attorney as counsel for Defendants via United States mail :

Harry B. Roback
Assistant United States Attorney
United States Attorney Office
555 4th Street, N.W.
Washington, D.C. 20530

Derek Allmon #12579
Pro Se Plaintiff

Derek L. Allmon

```
 1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF ARKANSAS
 2                     WESTERN DIVISION

 3

   UNITED STATES OF AMERICA,
 4
                        Plaintiff,
 5

 6      v.                           No. 4:04CR00169-01 WRW

   DEREK ISAAC ALLMON, SR.,          Thursday, June 15, 2006
 7                                   Little Rock, Arkansas
                       Defendant.    9:35 a.m.
 8

 9            TRANSCRIPT OF SENTENCING HEARING
         BEFORE THE HONORABLE WILLIAM R. WILSON, JR.,
10          UNITED STATES DISTRICT JUDGE, and a jury

11

   APPEARANCES:
12

   On Behalf of the Government:
13

        MS. JANE W. DUKE, First Assistant United States Attorney
14         United States Attorney's Office
           Eastern District of Arkansas
15         425 West Capitol Avenue, Suite 500
           Little Rock, Arkansas  72203-1229
16

17   On Behalf of the Defendant:

18        MR. B. DALE WEST, Attorney at Law
            Post Office Box 1077
19          201 North Slemons
            Monticello, Arkansas  71657-1077
20

21

22

23       Proceedings reported by machine stenography and displayed
     in realtime; transcript prepared utilizing computer-aided
24   transcription.

25
```

Christa R. Newburg, RDR, CRR, CCR
United States Court Reporter

1        MS. DUKE:  No, your Honor.

2        THE COURT:  All right.  Other than the objections

3 already made, are there any objections to the interpretation of

4 the sentencing options?  If so, state them now.

5        MS. DUKE:  None for the government.

6        MR. WEST:  None, your Honor.

7        THE COURT:  All right.  Any motions for departure?

8        MS. DUKE:  No, sir.

9        THE COURT:  All right.  If y'all will come around,

10 Mr. West, you and Mr. Allmon can address me, and then Ms. Duke

11 will speak, and then I'll announce the sentence.

12        MR. WEST:  Your Honor, I believe Mr. Allmon wants to

13 address the Court, if he may.

14        THE COURT:  Are you going to address me?

15        MR. WEST:  Yes, sir.

16        THE COURT:  Do you want to go first or second?

17        MR. WEST:  Yes, sir.  I will go first.

18        THE COURT:  It's up to you.

19        MR. WEST:  That will be fine.  I will go first.

20    Your Honor, as you know, we spent about ten days in trial

21 in this matter.  There were multiple witnesses called.  It

22 seemed like everybody in this, and I don't mean -- the jury has

23 found what they found.  I can't eliminate that, although I would

24 like to.

25    Your Honor, the other defendants that came in and testified

Christa R. Newburg, RDR, CRR, CCR
United States Court Reporter

1    in this matter, a lot of this action took place when Mr. Allmon

2    was in Mason, Tennessee, and some of these shootings took

3    place -- I think the shooting of Turna Grigsby took place when

4    he was in Mason, Tennessee.  On Mark Williams, the first

5    shooting, took place when Mr. Allmon was in Dallas.  And looking

6    down on paragraph No. 4, your Honor, of the presentence report,

7    paragraph No. 4, it lists the defendants that testified in this

8    matter and the sentencing that they got.  The largest sentence I

9    see out of everybody that testified was, Bobby Hart got 235

10    months in prison.  Now, I don't know whether that was before the

11    departure was requested and granted.  I'm not sure on that.

12        Mr. Silva, who I've stated several times in my presentence

13    report, response to presentence report, was held accountable --

14    he is spending 155 months, your Honor.

15        And I don't know whether the Court's hands are bound here,

16    but if the Court could give us a sentence that is in line with

17    everybody else's.

18        Now, they're saying he was the ringleader, but he was in

19    jail most of the time.  How can a person have that much control

20    over somebody that's out of jail?  But I know what the jury

21    found and I'm not arguing with that.  I'm just arguing on

22    Mr. Allmon's behalf that his sentence should be in line with the

23    other sentences that were given in this matter.  We don't want a

24    50 percent departure because we haven't testified.  But if they

25    could just be in line with the predeparture sentences that

1  Mr. Silva got.  In my opinion, and I will always think this,

2  that Mr. Silva was the ringleader of this case.  He would not

3  tell us who the people were in Dallas, Texas, who he was getting

4  the drugs from.  He wouldn't tell us in court.  And he was --

5  his testimony should have been truthful, but it wasn't, because

6  he said he didn't know the names.  And I just respectfully

7  request, your Honor, that if there's any way possible that

8  Mr. Allmon, one day, be him 70 years old, 75 years old, will be

9  able to walk free once again.

10      That's all I have, your Honor.

11      Derek?

12          THE COURT:  All right.  Mr. West, I want to thank you

13  again for accepting the appointment in this case.  It was a

14  complicated, tough case, and that's what it takes to make the

15  justice system work, to have good lawyers like you that are

16  willing to take an appointment in a tough case, and I appreciate

17  it very much.  And all the judges of the Eastern District of

18  Arkansas do.

19          MR. WEST:  Thank you, Judge.

20          THE COURT:  All right.  Mr. Allmon, you are entitled

21  to address me.

22          THE DEFENDANT:  Your Honor, I -- well, first of all, I

23  continue to maintain my innocence.  I actually object to a very

24  large part of this hearing, but I would like to address and have

25  the opportunity to be heard concerning all these threats that

1    I'm supposed to be writing letters to people and made threats.

2    I mean, every time I say hello to someone, it becomes a threat

3    some kind of way through the eyes of Ms. Duke and Mark Stafford.

4         If I speak to someone and quote something to them out of

5    the Bible, I mean, how does that become a threat?

6              THE COURT:  Well, the only threat that I am -- that I

7    have addressed is, as far as I recall, is the one that a letter

8    that was -- who was that letter written to?

9              THE DEFENDANT:  I don't even know.

10             MS. DUKE:  Leodis Cochran, your Honor.

11             THE COURT:  Leodis Cochran.  I read it, and it

12   definitely looked like a threat to me.  The Bureau of Prisons

13   might have had a different idea, but that's the only one I

14   referred to that I can think of.

15             THE DEFENDANT:  Here in the presentence report, it

16   states that something that was dealt with on many years ago in

17   1990 and '91 that I'm supposed to have threatened a judge in and

18   marshals and probation officers and all this type of stuff.

19   This was a major investigation done, was totally unfounded.  I

20   mean, it was allegations made by, from what I understand, I

21   never knew, but some inmate from the county jail.

22        All of these allegations have been constantly entered into

23   my central files and other files or whatever that has something

24   to do with different decisions of my well-being while I'm in the

25   Bureau of Prisons and what type of activities I'm involved in,

Christa R. Newburg, RDR, CRR, CCR
United States Court Reporter

1  how I'm housed.  Even during my pretrial situation, even as far

2  as my phone, as far as the fact that I've been held in solitary

3  confinement for over 14 months, all my privileges taken, so on

4  and so forth.

5      This was something that happened in 1991 that's dealt with

6  and unfounded, and still it's prejudicing my situation.  You

7  know, I mean, is there a reason why just any allegation can be

8  threw into a file?  I mean, my procedural rights to due process

9  says I have the right to notice and an opportunity to be heard.

10 You know, as -- I mean, it's a basic part of the concept of

11 procedural due process of rights on an attempt to arrive at the

12 truth.  I mean, the right to be heard before being condemned

13 suffering a grievous loss of my kind, of any kind, is a

14 principle basic to our society.  The fact-finding process even

15 involves the determination of the truth of the allegations of a

16 specific violation, a specific administrative rule of law has

17 been violated.  I've never even had that opportunity.  All this

18 stuff is just threw in my files.

19     It's like anything that someone stands up and say against

20 Derek Allmon, it's just automatically presumed as being the

21 truth.  You know, I never have the opportunity to challenge it

22 or anything.  It's just threw in my files and then I'm totally

23 mistreated behind it.

24     Throughout this whole ordeal from the investigation

25 starting in April of 2003 to the indictment, presentencing, the

35

1   trial, and now the sentencing, I mean, I have been -- I feel

2   that I have been treated totally unfair and different from every

3   codefendant, I mean, in this indictment.  We're talking about

4   three years.

5           THE COURT:  Is that all?

6           THE DEFENDANT:  Well, not exactly.

7           THE COURT:  All right.

8           THE DEFENDANT:  I mean, you might not exactly want to

9   hear it, but it's not really all that I would like to say.

10          THE COURT:  Well, try me.  If you want to say

11  something, you can say it, and I'll rule on it or take whatever

12  action I deem appropriate.  I want you to -- I want to hear you

13  out.

14          THE DEFENDANT:  Well, I mean, I don't know if it's

15  good to try -- I wrote you two or three letters addressing the

16  situations, I mean, that, you know, the harm that's been done to

17  me since I've been in jail and so forth.  I hope that you didn't

18  receive my letters as a threat.  You know.

19          THE COURT:  I didn't.

20          THE DEFENDANT:  Okay.  Well, thank you for that.  I

21  mean, you know, all the rest of my letters are always a threat,

22  but -- I addressed several issues of misconduct on certain

23  people's behalf towards me.  Mr. Cloar, when he was my attorney,

24  I brought several issues with him over the phone and so forth,

25  and he said that he would address them to the Court, which they

Christa R. Newburg, RDR, CRR, CCR
United States Court Reporter

1    never were.  I brought up several issues to Mr. West, and I

2    don't know if they was ever addressed or not.

3         For a while, I had a rather rough time trying to contact

4    and make contact with Mr. West, because, number one, as I say,

5    I've been incarcerated in solitary confinement for over 14

6    months, without use of the telephone, without proper visitation

7    to my family and so forth.  My wife and kids, they can basically

8    verify that.  No access to the legal law library.  I mean, just

9    all kinds of just violations, that I could not communicate with

10   my attorneys, and I think me and Mr. West had a big disagreement

11   about it, me and Mr. Cloar had a major disagreement, came to

12   point of him being fired.

13        I would like for something to be addressed and dealt with.

14   I mean, especially as far as these allegations that are not true

15   taken out of my file.  You know, it definitely prejudices my

16   situation.  I mean, I'm already in a bad enough situation as it

17   is from hearsay evidence that I've been convicted off of, you

18   know.  And there was, you know, one particular allegation

19   that -- well, it wasn't an allegation, it was one particular

20   incident that happened, and Mr. Cloar said that he was going to

21   address it.  I even addressed it to you somewhat in a letter.  I

22   addressed it halfway to Judge Forster, I guess, in my bond

23   hearing, you know, concerning Mark Stafford and something that

24   he did that was probably totally out of order.  But other people

25   might not feel that way.

Christa R. Newburg, RDR, CRR, CCR
United States Court Reporter

1      Along with the fact that I was sent to Forrest City,

2   Arkansas.  It was not at my request, which I don't get one

3   anyhow, but I was sent to Forrest City, Arkansas, by the request

4   of Ms. Duke, and she knew that there were informants there on my

5   case.  They put us in the same unit together.  You know, I mean,

6   and she knew that these people was there.  We're talking about

7   four or five different people.  I can call out all of their

8   names, if need be.  I was put in the same unit with these

9   people, you know.  And, you know, everybody is always saying

10  that I did this or I did this or I did this.  I mean, where does

11  my safety and well-being even come into play?  You know, I was

12  put in the same unit with five different people that has came to

13  this courtroom or to the grand jury and testified against me in

14  some shape, form, or fashion.

15      After whatever happened in Forrest City, Arkansas, which I

16  wrote you about, you know, I wrote you about it as soon as it

17  happened because I was like, hey, I see what's going on here.

18  I'm being -- you know, it looks as if I'm being framed for

19  something else again.  Then I was accused of -- whatever

20  happened there, I was in the hole again.  As Mr. West say, I'm

21  always away from everybody, but I always take the blame some

22  kind of way.  I was snatched up and drove down to Houston,

23  Texas, put in the hole in Houston -- when I say the hole, I mean

24  special housing unit.  We call it the hole.

25          THE COURT:  Right.


                Christa R. Newburg, RDR, CRR, CCR
                   United States Court Reporter

38

1        THE DEFENDANT:  Put in there, stripped down for all my

2   privileges, as always.  The captain there told me that he had

3   spoke with Ms. Duke and he is going to do whatever Ms. Duke tell

4   him to do as far as the punishment given to me.  I'm like,

5   punishment?  I haven't even been charged with anything.  I don't

6   even know what's going on.

7        They told me at first that, well, my wife and kids drove

8   all the way from Dallas, Texas.  They wouldn't let them visit

9   with me.  They wouldn't let me use the phone.  First it came out

10  that, oh, I was not going to use the phone for five years.  I

11  filed on that to the warden and so forth, and they came back and

12  said, well, there was a mistake and so forth and so on.

13       I mean, it's been -- I mean, they took all of my personal

14  belongings.  I could not have deodorant.  I could not have this

15  and that.  Just everything.  I've been totally mistreated

16  through the whole ordeal.

17       Okay.  I'm going to prison.  But when does the mistreatment

18  stop?  You know, and, now, well, I write a letter to Leodis

19  Cochran, who used to be my best friend, I thought, and I think I

20  quoted more so out of the Bible and so forth to him and so

21  forth, and you say you assumed that that was a threat, you know,

22  or some of the things that I said and so forth.  I mean, when

23  will this stuff be taken out of my file that's not -- that has

24  not been substantiated?

25       No one is basically held accountable for their actions but

1    me, and everybody, as long as they come up in this courtroom and

2    push their actions off on Derek Allmon, then I have to accept

3    everyone else's actions.  Any man over the age of 18 years of

4    age is a grown man, and everyone in this indictment was anywhere

5    from 20 years old to 60 years of age.  But 25 or 26 people came

6    up here and testified that they did -- that they committed

7    heinous crimes, all kinds of crimes, and in the end, I stand

8    accountable for everybody's actions.  You know, not just my own.

9    But I'm accountable for everyone else's actions.  That's a bit

10   unfair.

11        You know, that's a bit impartial [sic] to me.  I'm not

12   saying on your behalf, but I feel on the whole government

13   behalf, it's a bit impartial.  It's not impartial.  It's not a

14   fair and impartial decision to me, I mean.

15        This situation, and you ruled what you ruled as far as all

16   the -- everything that we objected to, you overruled it, but

17   this situation where this thing of pecuniary value where whoever

18   said that they were -- to make a long story short, Keith Holmes,

19   I don't even know him.  You know, and that was testified to in

20   trial and Garrick Allmon testified and Keith Holmes or whatever,

21   but he stated that he asked, that he asked Garrick Allmon for a

22   certain amount of money, if I'm correct, and some drugs.  The

23   thing here in the report says that -- or in the Sentencing

24   Guidelines says that something of pecuniary value has to be

25   offered.  He asked for it.  So it was not offered to him.  You

1    know, I mean, so I didn't understand that quite. Maybe, you

2    know, maybe I'm not that intelligent or maybe I'm ignorant. I

3    don't know. But I didn't quite understand. I think the word

4    asked and offered is totally -- kind of explains themselves, you

5    know.

6        I don't know where I'll be sent to or whatever, you know.

7    As you said, you would put in there that I would not be able to

8    write to certain individuals and so forth. Well, I mean, I

9    don't quite have the desire to write to certain individuals

10   anyhow, you know. I think I should have had the freedom -- I

11   have the freedom of speech, and when I spoke, it was not to be

12   of a threat. I was speaking from my heart. I was speaking from

13   the Bible. I was speaking from what was true, you know. But

14   just like you ordered for me not to be able to write to these

15   people, whatever, I would like for -- I don't know how many of

16   my kids is out there in the audience or whatever, out here in

17   this courtroom. I know I see my wife and a couple of my kids,

18   you know. I would like for -- to go somewhere where I would be

19   able to maintain some type of family ties. You know, I mean --

20            THE COURT:  Well, the Bureau of Prisons decides where

21   you go. I don't make that decision.

22            THE DEFENDANT:  No, but you all do make

23   recommendations. I do understand that much. I've seen that in

24   all of these other sentencings, where Bobby Hart and different

25   ones was made recommendations to go certain places. No, I did

1    not cooperate with the government, so maybe I don't have that,

2    you know, that right, you know.  I would appreciate very much,

3    you know, if you would be as fair and impartial with me as

4    possible.  I mean, I've been asking that, but, I mean, I'm never

5    hearing anything back from the courts or anything on nothing

6    that I addressed.  And so I figure that maybe -- I don't know.

7    Maybe -- I really kind of figure, I really kind of felt that

8    whatever I say or write or whatever is just basically goes

9    unheard or even unconsidered, you know, just goes unconsidered,

10   because I have basically cried out to this Court ever since this

11   thing has started, from the day of my bond hearing, I have cried

12   out to this Court, and I never received -- it wasn't just you.

13   I mean, with Judge Forster and so forth, I cried out to this

14   Court.

15       THE COURT:  I believe I sent all your communications

16   that you sent me, at least I intended to and I think I did, sent

17   them to your lawyers for their action, whatever they deemed

18   appropriate.

19       THE DEFENDANT:  Oh, okay.  Well, sorry, Mr. West, but

20   I never did -- you know, I never did hear anything from any of

21   my attorneys.

22       One last thing here.  As I stated, I was held accountable

23   for everyone else's actions, and as Mr. West stated, that these

24   people have admitted to committing, you know, all types of

25   heinous crimes.  Damon Guthrie, it was very, very clear in your

1   courtroom in the trial, five or six of the government witnesses
2   testified to that attempted murder.  You know, that was the
3   government witnesses, not ours, that stated that that was Damon
4   Guthrie.  And no formal charges, but I end up with it some kind
5   of way.  All the evidence is there.  Mark Stafford chooses to
6   ignore the evidence.  He didn't want Damon Guthrie charged.  I
7   was in Dallas, Texas.  Karlos Harris, which was one of their
8   witnesses, his statement to the Pulaski County Sheriff's
9   Department was totally different from his testimony, and they
10  have copies of both.  It was totally different.  You know, he
11  made reference in his very first statement to Pulaski County
12  that the people involved was Damon Guthrie and Leonard Farmer,
13  you know.  I never offered anybody anything of value.  I was
14  Rashaun Jordan's cousin.  That was it.

15       Kevin Allmon, Shahidah Salaam, Garrick Allmon, Julian
16  Allmon, Steven Burse, all of them testified that it was Damon
17  Guthrie.  But the calls showed it was Damon Guthrie.  Possession
18  of the car, everything.  I mean, we have people such as Gary
19  Godley, Damon Guthrie, Leonard Farmer, Leodis Cochran that has
20  committed several murders, and they were never charged.  You
21  know, but I stand here responsible for their actions.  They were
22  never charged because those two people right there did not want
23  them to be charged.  You know, that never -- it was never dealt
24  with.  I mean, I don't understand how no one else has to stand,
25  you know, responsible for their actions, and it's all pushed off

1    on me.  It's all pushed off on Derek Allmon.  You know, you're

2    talking about at least ten different murders that could be

3    solved in this city here between Little Rock, Arkansas, and

4    St. Louis, Missouri, but Ms. Paula J. Duke here, she chooses to

5    call the homicide divisions in Little Rock and St. Louis and

6    tell them, hey, don't charge our informants.  You know, they did

7    these murders and so forth, and, yeah, they could probably be

8    proven, but don't charge our informants because, you know, they

9    testified against Derek Allmon.  They did what we wanted to do.

10        So these people, they've got a white sale at the U. S.

11   Attorney's Office, you know.  I mean, everything that -- you

12   know, they committed all these crimes, and it gets -- everything

13   that they -- like I say, a white sale.  You know how J. C.

14   Penney gives a white sale?  It's a white sale at the U. S.

15   Attorney's Office.  They get whatever it is that they want and

16   they walk on home with probation, immunity, you know, what, 67

17   months.  And because I choose to go to trial, you know, I mean,

18   I get took out here behind the Statehouse Convention Center and

19   basically get hung.  You know, I feel I've been treated unfair.

20        But in the end, please take some of that out of my files

21   that don't belong there, if you would, or order it taken out.  I

22   don't know how this works, but --

23            THE COURT:  All right.  Ms. Duke?

24            MS. DUKE:  Your Honor, just for the record, I want to

25   say that I have never spoken to any homicide division anywhere

Christa R. Newburg, RDR, CRR, CCR
United States Court Reporter



U.S. Department of Justice

Federal Bureau of Prisons

*Designation & Sentence Computation Center*
*346 Marine Forces Drive*
*Grand Prairie, Texas 75051*

July 15, 2006

The Honorable William J. Wilson, Jr.
Judge of the U.S. District Court
  for the Eastern District of Arkansas
Richard Sheppard Arnold United States Courthouse
600 West Capitol Avenue
Little Rock, AR 72201

**Re: ALLMON, Dereck Isaac**
    Reg. No. 12579-076
    Docket No. 4:04CR00169-01-WRW

Dear Judge Wilson:

        Thank you for your recommendation that Dereck Allmon serve
his term of confinement at the highest security level facility.
In addition, you recommend he participate in the Residential Drug
Abuse Program (RDAP). Mr. Allmon was recently sentenced in your
court to a life term for Conspiracy to Distribute Cocaine
Hydrochloride, Possession with Intent to Distribute Marijuana,
Possession with Intent to Distribute Marijuana, Aiding and
Abetting the Possession of a Firearm During a Drug Trafficking
Offense, Aiding and Abetting the Attempt to Kill a Witness,
Aiding and Abetting the Possession with Intent to Distribute
Cocaine Hydrochloride, Distribution of Cocaine Hydrochloride,
Possession of Heroin, aiding and Abetting the Possession with
Intent to Distribute Cocaine Hydrochloride, Aiding and Abetting
the Distribution of Cocaine Hydrochloride, Conspiracy to Kill a
Witness and Attempting to Kill a Witness.

        During the designation process, we were aware of your
recommendations. Regrettably, in the case of Mr. Allmon, your
recommendations cannot be followed in their entirety. Mr. Allmon
has been classified as a high security level offender.
Accordingly, Mr. Allmon has been designated to the high security
level facility in Terre Haute, Indiana.

        Although the RDAP is not available at high security level
facilities, staff there will work closely with Mr. Allmon and
encourage him to participate in a variety of substance abuse

education and counseling programs offered at the Terre Haute facility. Should Mr. Allmon become eligible for transfer, he will be considered for a facility which offers the RDAP, under the established program criteria.

We regret we were unable to comply with the Court's recommendations in their entirety. Please be assured of our continued commitment to comply with judicial recommendations whenever possible.

Sincerely,

Rebecca Tamez

Rebecca Tamez
Chief

cc:  Warden, USP Terre Haute

DISCIPLINE HEARING OFFICER REPORT                    BP-S305.052 MAY 94
U.S. DEPARTMENT OF JUSTICE                            FEDERAL BUREAU OF PRISONS

---

**V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)**

Your due process rights were reviewed with you by the DHO at the time of your hearing.  You stated you understood your rights to a copy of the incident report, the presentation of documentary evidence, the right to staff representation and witnesses, and a right to silence.

The DHO finds you committed the prohibited act(s) of Use of the Phone for Abuses Other Than Criminal Activity, code 297.  This is based on the reporting staff's statement that on 9-4-06, at approximately 1240, he monitored a recorded phone call from your account on 9-2-06 to 972-248-9161.  You instruct the other party to "Call "Dick" from his  mobile phone with specific instructions that you also repeat to your son.  At your direction, your son calls 817-798-6466.  You son then passes on specific information between you and "Dick".  You then have your son place a second call to 501-541-4602, where you pass on information to a third party and discuss your car.

You appeared before the DHO **admitting** the charge(s) as noted in section 3 of the report.

Therefore, based on the statement of the reporting staff, acknowledging the duty and obligation to report the truth and submit accurate statements, and your own admission, the DHO finds some evidence to conclude you committed the prohibited act(s).

---

**VI. SANCTION OR ACTION TAKEN**

  30 DS, SUSPEND
180 DAYS LP PHONE

---

**VII. REASON FOR SANCTION OR ACTION TAKEN**

Abuse of the Telephone is a violation of institutional rules and hampers staff's ability to maintain accurate accountability of inmates utilizing the telephone system.  The sanctions were imposed in an effort to impress upon you the seriousness of your actions and deter you from committing such acts in the future.

---

**VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action.  The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure.  A copy of this report has been given to the inmate.**

| | Yes | X | No | | |
|---|---|---|---|---|---|

---

**IX. DISCIPLINE HEARING OFFICER**

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| F.A. Bierschbach | | November 8, 2006 |
| Report delivered to inmate by: | | Date: |

DELIVERED DEC 15 2006

---

(This form may be replicated in WP)                    Replaces BP-304(52) of JAN 88

Page 2 of 2

BP-S740.052    **REQUEST FOR INMATE TELEPHONE RESTRICTION**   CDFRM
JAN 02

**U.S. DEPARTMENT OF JUSTICE**                          FEDERAL BUREAU OF PRISONS

INSTRUCTIONS: This form is used by staff to request the Warden's approval to impose a telephone restriction in accordance with the policy on Telephone Regulations for Inmates. This form is used when the telephone restriction requested relates to the inmate's PSF - Serious Telephone Abuse, or a pending investigation or disciplinary action for possible telephone abuse. A telephone restriction for one of these purposes must be necessary to protect the safety, security, or good order of the institution, or to protect the public. A telephone restriction imposed **pending** investigation or disciplinary action for possible telephone abuse is limited to 30 days duration and must be renewed at the end of the 30 day period, or be automatically discontinued by Trust Fund Branch staff. Inmates dissatisfied with the Warden's decision may appeal through the Administrative Remedy Program.

| Inmate's Name<br>ALLMON, Derek | Reg. No.<br>12579-076 | Institution<br>USP-Terre Haute |
|---|---|---|

**Part I - Request for Telephone Restriction** (For the following reason(s) insert a brief description)

Based on clear conduct we are requesting that his telephone restriction be restored for his ongoing litigation and the listed family members only. He has maintained clear conduct for over half of his restriction therefore showing <u>positive behavior.</u>

The above-named inmate is recommended for the following telephone restriction; insert description and termination date, if applicable:
Return telephone privileges for the following individuals.

**Wife, Four Son's, Two Daughters, Brother and Attorney. A total of 9 numbers. See attached list.**

| Requesting Staff Member's Name<br>(Printed and Signature)<br><br>V. Boyer | Title<br><br><br>Unit Manager | Date Signed<br><br><br>04-03-07 |
|---|---|---|

**Part II - Warden's Consideration:** the telephone restriction requested is (check one):

| ☒ APPROVED<br><br>☐ DENIED | Warden's Signature | Date Signed<br><br>4.11.07 |
|---|---|---|

**Part III - Distribution** - A copy of this form was delivered to the inmate on the date of: 4/12/07

By: Delivering Staff Member's Printed Name and Signature
L. Clayton / Clayton

Original - Inmate; Copy - Trust Fund Section; Copy - Inmate Central File, Section 3, unless FOI Exempt
**(This form may be legibly handwritten or printed)**
(This form may be replicated via WP)

```
 THP27   606.00  *      MALE CUSTODY CLASSIFICATION FORM      *      01-23-2007
PAGE 001 OF 001                                                      13:01:10
                         (A) IDENTIFYING DATA
REG NO..: 12579-076              FORM DATE: 01-23-2007          ORG: THP
NAME....: ALLMON, DERECK ISAAC
                                      MGTV: NONE
PUB SFTY: GRT SVRTY,SENT LGTH         MVED:
                         (B) BASE SCORING
DETAINER: (0) NONE               SEVERITY.......: (7) GREATEST
MOS REL.: 540                    CRIM HIST SCORE: (06) 7 POINTS
ESCAPES.: (0) NONE               VIOLENCE.......: (5) < 5 YRS MINOR
VOL SURR: (0) N/A                AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED DRUG/ALC ABUSE.: (1) <5 YEARS
                         (C) CUSTODY SCORING
TIME SERVED.....: (3) 0-25%       PROG PARTICIPAT: (1) AVERAGE
LIVING SKILLS..: (2) GOOD         TYPE DISCIP RPT: (1) > 1 HIGH
FREQ DISCIP RPT.: (1) 2-5         FAMILY/COMMUN..: (4) GOOD

                  --- LEVEL AND CUSTODY SUMMARY ---
BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY   CONSIDER
+21  +12    +2        +23        HIGH       N/A             IN      INCREASE
                                 MED
G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

2004

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: Allmon, Derek, I. | 12579-076 | F-2 | USP THA |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**          This complaint and request is based on SIS Brechbill's judicial bias, unnecessary and unexplainable lengthy institutional investigation of **unsubstantial** threats to informants supposely made by inmate Derek Allmon who Mr. Brechbill has unfairly and without just cause kept on lockdown in SHU since April 19, 2007.

However, this false investigation is nothing more than another frame-up attempt, and vengeance of a personal vendetta at the request of AUSA Paula Jane Duke from the Eastern District of Arkansas. It is a grave miscarriage of justice in which SIS Brechbill is clearly abusing his BOP powers against me (Allmon) in order to appease Jane Duke. Brechbill is constantly using erroneous allegations to make adverse decisions against me, and deny my rights to due process. Along with unwarranted attempts at restricting said inmate's interactions with immediate family members.

I (Allmon) have not violated any administrative rule of this institution. Nor attempted to break any law by engaging in illegal activity. Thus I maintain my right to "freedom of speech." And there is nothing illegal nor criminal with me voicing my lone opinion about snitches to my family, friends and associates. Especially when the snitches are ex-family member which I have not bothered.

7/3/07
DATE          (Attachment)                    Derek Allmon/ *Derek I. Allmon*
                                              SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____          _____
DATE                               WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: _____

                                                  CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                         RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)

Derek Allmon 12579-076
P.O.Box 12015
Terre Haute,In.47801


Mr.Loftness
Executive Assistant
Office of Regional Director
400 State St.,Tower II,8th Floor
Kansas City,Kansas 66101


August 16,2007


RE: VINDICTIVE ABUSE OF AUTHORITY


Dear Mr.Loftness:


With all due respect I am not sure of your current position,so
please correct me if wrong about your title.

However,on 8/7/07 while being housed in the Special Housing Unit
(SHU) at USP Terre Haute the Regional Director and I had a brief
conversation pertaining to said complaint in which I was instructed
by him to make written contact with you(Mr.Loftness).

This complaint is based on the "vindictive abuse of authority"
bestowed upon me (Derek Allmon) by SIS Lieutenant K.O.Brechbill.
Since my arrival at this institution in July 2006 Mr.Brechbill has
made several attempts to persecute me for one reason or another in
order to appease AUSA Jane Duke who has a personal vendetta with me.

Jane Duke is the prosecutor who has been over zealous in her fail-
ed attempts of convincing Charlie Team and Rebecca Tamez at the Des-
ignation Center in Grand Prarie,Texas to house me at the BOP's ADMAX.

Sir,please be advised that on 8/6/07 Mr.Brechbill claims to have
completed a thorough investigation while keeping me on segregated
lockdown since 4/19/07. But his investigation is full of fabricated,
erroneous accusations which has resulted in Brechbill writing me two
unwarranted incident reports (copy enclosed).

In this incorrect report Brechbill claims that I violated a Court
Order by contacting some woman name,"Cathy",directly or indirectly
whose name is included in a list of twenty-nine individuals not to
contact. And he further claims that I threatened this person via way
of a legal newspaper article that is availible for reading for the
entire world.

The report then goes on to say that I (Allmon) sent envelopes (
plural),with the article to places (again plural) where the lady's
relatives live. Thus,making said person 'Cathy" perceive these com-
munications as physically/life threatening.

First, I mailed only one envelope to only one place with the names Dorothy, Ruth and Cathy on the outside of the envelope. Along with the fact that the name Cathy is a common name that more than one of my family members and friends go by. Ruth and the Cathy which I intended just so happens to be elderly women who are members of my family. Though Ruth is also of kin to the **"Cathy"** whom SIS Brechbill is referring to. I have never since the Court Order sent any communications to this woman nor her husband, directly or indirectly. Even though there is no such court order restrictions on me with anyone by the name of Cathy. Please review Court Order list of witnesses not to be contacted.

Second, a incident report of **"Threatening Another Person and Unauthorized Use of the Mail"** is totally erroneous. Especially due to the fact that perceived threat was arrived via either the feelings of guilt, fearfulness, or whatever unstable nature within the mind of the **"Cathy"** whom Brechbill refers to. And, the incident report truly does not coincide with the evidence and exhibits.

Comments written on the news article by me (Allmon) said, **"new day, new year, new evidence, new trial"** refering to the information in the article and my own personal situation. I went on to state cities and locations of other family and associates whom may care to read said newspaper article. So with this being the only content contained inside the envelope, there is no possible way that a fair minded, rational thinking person can have a valid claim of threat in any manner.

I filed two previous BP-8's and one BP-9 against SIS Brechbill in which he himself answered one of the remedies in such a bias, unprofessional manner that it caused Associate Warden Ms. Roal to order the SHU counselor Mr. Kramer to write a second response.

Brechbill has now written this unsubstantial incident report in retaliation of a personal vendetta in conjunction with prosecutor Jane Duke. This action appearing to occur solely because Brechbill has the attitude that no one, especially an inmate is ever suppose to challenge him under any circumstances.

These actions are wrong, and is a **"grave miscarriage of justice."** Wherefore, I now ask and pray that yourself or someone in higher authority than SIS will intervene by correcting this bias behavior, dismissing unwarranted incident report, granting me any/all relief deemed just and proper. This request is presented solely in the interest of fundamental fairness and substantial justice.

Truthfully submitted,

D. Isaac Allmon

Note: As of 8/13/07 the UDC had yet to meet the 72 hr. requirement of a hearing with inmate Allmon pertaining to said incident report. Thus, rendering said report invalid and void in accordance with BOP policy.



Case 4:04-cr-00169-WRW     Document 670     Filed 06/19/2008     Page 1 of 2

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
#### WESTERN DIVISION

UNITED STATES OF AMERICA

VS.                                   4:04-CR-00169-01WRW

*DEREK ALLMON*

### ORDER

Pending is the Prosecution's Motion to Include Restriction to Mail Privileges as Part of
the Judgment and Commitment Order (Doc. No. 652). During the sentencing hearing held
today, Defendant did not object to the motion.

For good cause shown, the motion is GRANTED. Accordingly, Defendant is prohibited
from sending any communications, either directly or indirectly, to the following people:

| | |
|---|---|
| Damon Guthrie | Leodis Cochran |
| Mark Williams | Joniel Washington |
| Lasommer Johnson | Julian Allmon |
| Gary Godley | Steven Burse, Jr. |
| Karlos Harris | Keith Holmes |
| Shahidah Salaam | Kevin Allmon |
| Freddie Silva | Ronald Green |
| Shawnte Robinson | Tremain Richardson |
| Bobby Hart | Garrick Allmon |
| Melissa Reddo | Leonard Farmer |
| Robert Hart | Horace Hudson |
| Derek Blake | Tuma Grigsby |
| Wayne Davis | Ronald Wade |
| Eric Simmons | Keon Neely |
| | Antonio Bland |

To the extent that I have the authority, I direct the Bureau of Prisons to confiscate and
forward to the United States Attorney for the Eastern District of Arkansas, any and all
communications addressed or directed to the persons listed in this order.

-1-

U.S. Department of Justice

Federal Bureau of Prisons

*Designation & Sentence Computation Center*
*346 Marine Forces Drive*
*Grand Prairie, Texas 75051*

September 14, 2007

Derek Allon
Reg. No. 12579-076
United States Penitentiary
P.O. Box 12015
Terre Haute, IN 47801

Dear Mr. Allon:

Your correspondence received at the Designation and Sentence Computation Center has been referred to me for response. You are requesting the Bureau of Prisons (Bureau) not transfer you to another facility. You indicate the Bureau is transferring you at the behest of an Assistant United States Attorney (AUSA).

Requests of this nature must originate with an inmate's Unit Team. I suggest you work closely with them regarding this issue.

Issues involving alleged misconduct by an AUSA must be brought to the attention of the United States Department of Justice, Office of the Inspector General, 950 Pennsylvania Avenue, N.W., Suite 4706, Washington, D.C. 20530-0001.

I trust this response has addressed your concerns.

Sincerely,

Ron Riker
Acting Section Chief

jaf
cc: CMC, USP Terre Haute

| 1. Name of Institution: **United States Penitentiary, Administrative Maximum, Florence, Colorado** |
|---|

**PART I - INCIDENT REPORT**

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| ALLMON, Dereck | 12579-076 | 10-30-2007 | 8:05 am |

| 6. Place of Incident | 7. Assignment | 8. Unit |
|---|---|---|
| SIS Office | Unassigned | Z01-105 |

9. Incident: *False report that was Nothing more than a 497 if that. Home of minor child's mediator grandma!*
Use of the telephone to further criminal activity

10. Code: 197 A (Attempted)

11. Description of Incident   (Date: 10-30-07   Time: 8:05 am   Staff became aware of incident)

Inmate Allmon has a court order restricting him from contacting certain individuals. He has attempted to murder witnesses and make death threats against the investigating agents and the AUSAs and their families. On the above date and approximate time, while reviewing inmate Allmon's telephone number request, I noticed that he was attempting to circumvent his court order and place a number on his list that is in direct violation of a court ordered restriction. He is prohibited from communicating with numerous individuals and attempted to add one of these individuals to his telephone list. He has continued this criminal activity through threats at previous institutions. *Lies from SIS Technician Braen and ex-SIS K.O. Beechbill. But initiated by erroneous, unsubstantial statements from jailhouse "snitches" trying to gain favor with government for reduction.*

| 12. Signature of Reporting Employee | Date and Time 10-30-2007, 8:50 am | 13. Name and Title (printed) L. Braren, SIS Technician |
|---|---|---|

| 14. Incident Report Delivered to above inmate by: | 15. Date Incident Report delivered 10/30/07 | 16. Time Incident Report Delivered 7:31 PM |
|---|---|---|

**PART II - COMMITTEE ACTION**

17. Comments of Inmate to Committee Regarding Above Incident *Ms. Braren spoke with Allmon and stated she possibly over reacted and misinterpreted inmate's valid attempt to communicate with his minor daughter through child's grandmother who's mediator and legal owner of said phone of contact.*

18. A. It is the finding of the Committee that you:
____ Committed the following prohibited act:

____ Did not commit a prohibited act.

B. ____ The Committee is referring the charge(s) to the DHO for further hearing

C. ____ The Committee advised the inmate of its findings and of the right to file an appeal within 15 calendar days.

19. Committee Decision is based on the following information:

*Expunged*

20. Committee Action and/or recommendation if referred to DHO (contingent upon DHO finding inmate committed prohibited act)

21. Date and Time of Action _____ (The UDC Chairman's signature next to his name certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

_____  _____  _____
Chairman (typed name/signature)   Member (typed name)   Member (typed name)

Record Copy - Central File Record; Copy - DHO; Copy - Inmate after UDC Action; Copy - Inmate within 24 hours of Part I preparation

DISCIPLINE HEARING OFFICER REPORT

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons
Florence, CO 81226

**EXPUNGED**

Incident Report Number:
1661522

| Inmate Name | ALLMON, Dereck | Reg No. | 12579-076 | Unit | Z/A ( H ) |
|---|---|---|---|---|---|
| Date of Incident | | 10/30/2007 | Date of Incident Report | 10/30/2007 | |
| Summary of Charges | 1. | USE OF THE TELEPHONE TO FURTHER CRIMINAL ACTIVITY Code 197A | | | |

**I.**    **NOTICE OF CHARGE(S)**

A.    The DHO hearing was held on    **11/14/2007**

**II.**    **STAFF REPRESENTATIVE**

A.    Inmate requested or appointed Staff Representative    No

B.    Testimony of the Staff Representative:  **N/A**

**III.**    **PRESENTATION OF EVIDENCE**

A.    Inmate    the charges.

B.    Summary of Inmate Statement:  **EXPUNGED**

C.    Witnesses

1.    The inmate requested witnesses    No

2.    Summary of Witness Statement:  N/A

D.    Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:    None

E.    Confidential Information: No confidential information was used by the DHO.

**IV.**    **FINDINGS OF THE DHO**

The following act(s) was (were) committed

Code    **EXPUNGED**    Summary of Acts Committed

**V.**    **SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS:** (Physical Evidence, observations, written documentation, etc.)

**EXPUNGED**

**VI.**    **SANCTION OR ACTION TAKEN**

**EXPUNGED**

**INMATES COPY**

**VII.    REASON FOR SANCTION OR ACTION TAKEN**

THE DHO FOUND INSUFFICIENT EVIDENCE IN THIS ACTION TO MAKE A FINDING.  THE INCIDENT REPORT AND CHARGE ARE THEREFORE EXPUNGED.  EVIDENCE DOES NOT SUPPORT THE CHARGE - EXPUNGED

**VIII.    APPEAL RIGHTS**

Yes.  The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action.  The inmate has been advised of his right to appeal this action within 20 calendar days following receipt of the DHO report under the Administrative Remedy Procedure.  A copy of the report has been given to the inmate.

**IX.    DISCIPLINE HEARING OFFICER**

M. Dunlap                                                        Date    _12-12-01_

Report delivered to inmate by    _____    Date    _____