**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                                        |     |
|----------------------------------------|-----|
| **DEREK I. ALLMON,**                   | )   |
|                                        | )   |
| **Plaintiff,**                         | )   |
|                                        | )   |
| **v.**                                 | )   |
|                                        | )   |
| **FEDERAL BUREAU OF PRISONS,**         | )   |
| **_et al.,_**                          | )   |
|                                        | )   |
| **Defendants.**                        | )   |
|                                        | )   |

Civil Action No. 08-314 (RMC)

_____

## MEMORANDUM OPINION

This matter is before the Court on Defendants' motion to dismiss or, in the alternative, for summary judgment.  For the reasons discussed below, the motion will be granted.

### I.  BACKGROUND

Plaintiff is a federal prisoner who currently "is incarcerated at the Administrative Maximum Penitentiary (ADX) in Florence, Colorado."  Memorandum in Support of Defendants' Motion to Dismiss and/or for Summary Judgment ("Defs.' Mot."), Declaration of Theresa Montoya ("Montoya Decl.") ¶ 2.  ADX "houses the most violent and dangerous offenders in the federal system."  _Id._ ¶ 4.  The prisoners at ADX "require an uncommon level of security and monitoring due to their records," which may include assault on or murder of staff members or other inmates, past predatory or violent behavior, or the continued operation of criminal enterprises while incarcerated. _Id._

According to his presentence investigation report ("PSR"), Plaintiff "was the organizer or leader of an organization involved in the distribution of cocaine hydrochloride, cocaine base, and marijuana."  Montoya Decl. ¶ 5.  The PSR further stated:

> [I]n November 2004, [Plaintiff] was in custody pending trial for his
> federal charges when he began to discuss with friends and associates,
> killing an individual [Plaintiff] suspected was cooperating with
> authorities, and planning to testify against him.  The witness was shot
> and rushed to the hospital with life threatening injuries.  While the
> murder attempt was unsuccessful, [Plaintiff] was convicted for his
> role as leader of the murder conspiracy.  [Plaintiff] was also convicted
> for his role in arranging the attempted murder of a second individual
> whom he suspected was cooperating with authorities and responsible
> for a number of his associates being arrested on July 9, 2003.

*Id.*

After his conviction in April 2006,  Plaintiff was housed at the Federal Correctional

Facility in Forrest City, Arkansas.  Montoya Decl. ¶ 7.  There he "directed an inmate, Rodney Floyd,

to attack a second inmate in retaliation for the inmate's cooperation with the government in the

[Plaintiff's] trial."  *Id.*  An internal investigation "revealed that not only did [Plaintiff] order the

assault by Mr. Floyd, but he also made several threats against the United States Attorney and

investigator prosecuting his case."  *Id.*  "Plaintiff was sentenced on June 15, 2006."  *Id.* ¶ 8.

According to the Judgment and Commitment Order, the sentencing judge recommended Plaintiff's

placement "in the most secure facility available."  *Id.*  The Federal Bureau of Prisons ("BOP")

classified Plaintiff "as a high security inmate and designated [him] to USP Terre Haute."  *Id.*  Days

later, on June 19, 2006, the sentencing judge issued an Order "prohibiting [Plaintiff] from sending

any communications, directly or indirectly, to certain individuals," and directing the BOP "to

confiscate and forward to the United States Attorney for the Eastern District of Arkansas any and

all communications addressed or directed to" those individuals.  *Id.* ¶ 9.

Staff at USP Terre Haute learned that "the wife of an individual who has testified

against [Plaintiff] at his criminal trial[] had received threatening communications from [Plaintiff]."

-2-

Montoya Decl. ¶ 11.  The recipient of the communications was among those individuals with whom Plaintiff was prohibited from communicating.  *Id.*  Staff later determined that Plaintiff had "circumvented and bypassed mail monitoring/screening procedures" by contacting other individuals in violation of the June 19, 2006 Order.  *Id.*  As a result, it was recommended that Plaintiff be transferred "to a facility, such as [ADX]" so that staff "could closely monitor [Plaintiff's] communications."  *Id.*  Accordingly, on October 3, 2007, Plaintiff was transferred from USP Terre Haute to ADX.  *Id.* ¶ 4.

According to Plaintiff, the BOP maintains in his Inmate Central File memoranda prepared by the United States Marshals Service ("USMS") and the United States Attorney's Office for the Eastern District of Arkansas ("USAO").  *See* Amd. Compl. ¶¶ 2-3.[1]  These memoranda allegedly contain "unsubstantiated, fabricated information from 'jailhouse' informants" indicating that Plaintiff "plan[ned] to escape and harm Judge Stephen Reasoner," Compl. at 2, the judge who presided over Plaintiff's criminal case.  *See United States v. Allmon*, 972 F.2d 244 (8th Cir. 1992) (affirming sentence of one year and ten months imposed by The Hon. Steven M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas, on Plaintiff's conviction of receiving a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)).  The USMS, Plaintiff asserts, has "forward[ed] erroneous memoranda to other jails and the Bureau of Prisons, with directions to house [him] in segregation units [where he has been] subjected to cruel and unusual punishments."  Compl. at 2-3.  Plaintiff alleges that the BOP and the USMS are "using the incorrect information in determinations adverse to [him]."  *Id.* at 2.  For example, the security

---

[1]     The Court will grant Plaintiff's Motion for Leave to File Amended Complaint [#20], and will refer to the amended pleading, *see id.*, Ex. [#20-2] as "Amd. Compl."

classification and custody level assigned to Plaintiff is higher, such that he is assigned to a maximum security facility. *Id.* at 3. Plaintiff attributes the BOP's decisions to deny him a halfway house placement, *id.*, to subject him "to very bias [sic] and derogatory statements and treatment from staff," *id.* at 5, to transfer him from one facility to another only while "blackboxed under a four man escort," *id.*, and to place him "in segregation units for extended periods with all privileges restricted," *id.*, to the BOP's reliance on the erroneous information in the USMS' memoranda. Further, Plaintiff asserts that his current placement "on two hour watch . . . on total lock-down at [ADX]" is a result of the BOP's reliance on the USMS memoranda.[2] *Id.*

Plaintiff brings this action against the BOP under the Privacy Act, *see* 5 U.S.C. § 552a, and demands that it "correct all inaccurate files, expunge any information not substantiated, [and] remove [him] from Maximum custody with a transfer to [a] proper facility."[3] Compl. at 6; Amd. Compl. ¶ 16. In addition, he demands monetary compensation of $1.4 million. Compl. at 6; Amd. Compl. ¶ 17.

---

[2]      According to the BOP, there are no "documents in the inmate's file which indicated [that] any information had been provided to the [BOP] by the [USMS]" concerning Plaintiff's transfer to ADX. Montoya Decl. ¶ 11.

[3]      The Court construes Plaintiff's pleadings as if the Privacy Act claims were brought against the BOP alone. Although Plaintiff alleges that information supplied by the USMS and the USAO is false or incorrect, this information appears to have been incorporated in memoranda now maintained by the BOP in his Central File. Only the BOP could make adverse determinations regarding his custody classification, security level, or designation to a particular correctional facility, regardless of the source of information on which its staff relied in reaching these determinations. Moreover, Plaintiff does not identify any specific record maintained by the USMS or the USAO on which either entity relied in making any determination adverse to him. Accordingly, the Court dismisses the USMS and the USAO as party defendants to this action.

## II.  DISCUSSION

Defendants move to dismiss or, in the alternative, for summary judgment, on three grounds:  (1) that Plaintiff's Privacy Act claims were not filed timely; (2) that regulations exempt the Inmate Central Files from the amendment and accuracy provisions of the Privacy Act; and (3) that Plaintiff cannot secure his transfer to a less secure facility by means of a civil action under the Privacy Act.  *See* Defs.' Mot. at 1-2.

### A.  Timeliness of Plaintiff's Complaint

A Privacy Act cause of action arises "at the time that (1) an error was made in maintaining plaintiff's records; (2) plaintiff was harmed by the error; and (3) the plaintiff either knew or had reason to know of the error."  *Szymanski v. U.S. Parole Comm'n*, 870 F. Supp. 377, 378 (D.D.C. 1994); *see Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987).  A new cause of action does not arise each time an adverse determination is made based on the allegedly erroneous records.  *Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir.), *cert. denied*, 537 U.S. 1057 (2002); *Bergman v. United States*, 751 F.2d 314, 317 (10th Cir.), *cert. denied*, 474 U.S. 945 (1985).  Unless the statute of limitations is equitably tolled, a late-filed Privacy Act claim is time barred.  *See Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 276-78 (D.C. Cir. 2003).

Because statute of limitations issues often depend on contested questions of fact, the Court must exercise caution before dismissing a complaint on statute of limitations grounds based solely on the face of the complaint.  *See Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981) (commenting on the "inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense").  Thus, the Court may grant a motion to dismiss as untimely "only if the complaint on its face is conclusively time-barred," *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.

Cir. 1996), or "if 'no reasonable person could disagree on the date' on which the cause of action accrued." *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (quoting *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

Plaintiff's Complaint states that, "[s]ince 1991 till present the [BOP] and [USMS] has [sic] repeatedly entered, maintained and utilized unsubstantiated, erroneous information from 'jailhouse' informants in [his] inmate files." Compl. at 2. This information has been used by BOP staff, among other things, to deny Plaintiff a halfway house placement in 1998. *Id.* at 3. From these statements, Defendants conclude that Plaintiff "had actual knowledge of this allegedly erroneous information no later than 1998." Defs.' Mot. at 6. Because Plaintiff did not file this action until February 2008, "well beyond the two-year limitations period[,]" Defendants argue that the Privacy Act claims are time-barred. *See id.*

In his Amended Complaint, among other things, Plaintiff alleges that it was not until May 2006 that he "came to suspect that incorrect information was being maintained in his prison records" when BOP staff at FDC Houston informed him that he was considered "a 'serious escape risk' whom [sic] had threatened a U.S. district judge." Amd. Compl. ¶ 5; *see id.* ¶ 7. He further alleges that his suspicions were confirmed on June 15, 2006 when his PSR was submitted to the court. *Id.* ¶ 6. Plaintiff explains that he referred "to incidents from his prior incarceration of 1991-1998 . . . merely to show the BOP's pattern of maintaining and using unsubstantiated information[] to repeatedly make adverse decisions against him." Plaintiff's Motion to Hold in Abeyance Defendants' Motion  [#17] ¶ 9.

For purposes of Defendants' motion to dismiss, the Court treats the allegations of the Amended Complaint as true. *See, e.g., United States v. Phillip Morris, Inc.,* 116 F. Supp. 2d 131,

135 (D.D.C. 2001). The Court accepts Plaintiff's representations that his cause of action did not

arise until May 2006. Review of the Court's docket shows that Plaintiff filed his original Complaint

on February 11, 2008, within two years of the date on which Plaintiff allegedly knew or had reason

to know of the erroneous records and the harms caused by the BOP's reliance on them.[4]

Accordingly, the Court denies Defendants' motion to dismiss on the ground that the claims are time-

barred.

### B. The Amendment and Accuracy Provisions of the Privacy Act

Subsection (e)(5) of the Privacy Act requires that an agency:

> maintain all records which are used by the agency in making any
> determination about any individual with such accuracy, relevance,
> timeliness, and completeness as to assure fairness to the individual in
> the determination.

5 U.S.C. § 552a(e)(5). An individual may access an agency's records or information in a system of

records pertaining to him, and may request amendment of those records. *See* 5 U.S.C. § 552a(d).

An individual may file a civil action against an agency which refuses to amend its records upon

request or fails to maintain its records with the requisite level of accuracy and completeness. *See* 5

U.S.C. § 552a(g); *Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C. Cir. 1992) (subsection (g)

provides civil remedies for violations of subsection (e)(5)).[5] In a civil suit filed pursuant to

---

[4]     The original Complaint and application to proceed *in forma pauperis* bear date stamps
indicating that the Clerk of Court received these papers on February 11, 2008. The Court approved
the application to proceed *in forma pauperis* on February 15, 2008, and these documents were filed
and officially entered on the Court's electronic docket on February 25, 2008.

[5]     In relevant part, subsection (g) authorizes an individual to file a civil action whenever
any agency "makes a determination . . . not to amend an individual's record in accordance with his
request." 5 U.S.C. § 552a(g)(1)(A). In addition, subsection (g) provides for the filing of a civil
action whenever an agency:

(continued...)

subsection (g)(1)(C), if the Court determines that the agency's actions were willful or intentional, the Court may award actual damages sustained by the individual as a result of the agency's failure to maintain its records with the requisite level of accuracy, and further may award costs of the action and attorney fees.  5 U.S.C. § 552a(g)(4).

Notwithstanding the relief available under the Privacy Act, an agency's Director may promulgate regulations to exempt any system of records within the agency from any part of the Privacy Act, *except* subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i), if the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional, probation, pardon, or parole authorities, and which consists of . . . reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).  Pursuant to this authority, regulations exempt BOP's Inmate Central Records System (JUSTICE/BOP-005), among other systems of records, from subsections (d), (e)(5) and (g), respectively, the amendment, accuracy and damages provisions of the Privacy Act.  28 C.F.R. §

---

[5](...continued)

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C).  The variation in language between subsections (e)(5) and (g)(1)(C) of the Privacy Act is "of no substantive significance."  *Doe v. United States*, 821 F.2d 694, 698 n.10 (D.C. Cir. 1987) (en banc).

16.97(a), (j).  "Custody classification forms, correspondence from other agencies, internal investigations, disciplinary reports and progress reports" are among the records maintained in the Inmate Central Records System.  Montoya Decl. ¶ 13.  Consequently, insofar as Plaintiff demands amendment of BOP records pertaining to his custody classification or security level, including information received from other government agencies, such relief is unavailable under 5 U.S.C. § 552a(g).  *See Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (per curiam) (denying injunctive relief on the ground that regulations exempt BOP records from amendment provision of Privacy Act); *Sellers v. Bureau of Prisons*, 959 F.2d at 309 (upholding district court's dismissal of claim for amendment of presentence report under subsection (d)).

Having exempted its records from the substantive provision regarding the agency's recordkeeping obligations, the BOP effectively deprives litigants of a remedy for any harm caused by the agency's substandard recordkeeping.  Accordingly, insofar as Plaintiff seeks damages for BOP's failure to maintain records in its Inmate Central Records System pertaining to him with the requisite level of accuracy and completeness, damages are not available.  *See Fisher v. Bureau of Prisons*, No. 06-5088, 2007 U.S. App. LEXIS 5140, at *1 (D.C. Cir. Mar. 1, 2007) (recognizing the promulgation of regulations exempting the Inmate Central Record System from the accuracy provisions of the Privacy Act); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (affirming dismissal of prisoner's claims because the "BOP has exempted its Inmate Central Records System from the accuracy provisions of the Privacy Act"); *Mitchell v. Bureau of Prisons*, No. 05-0443, 2005 WL 3275803, at *4 (D.D.C. Sept. 30, 2005) ("[I]nsofar as plaintiff demands damages for BOP's failure to maintain records in its Inmate Central Records System pertaining to him with the requisite level of accuracy and completeness, damages are not available[]" because such records

are exempt from 5 U.S.C. § 552a (e)(5)).[6]

### C.  Transfer to a Less Secure Facility

Plaintiff is no more successful in using this Privacy Act suit as a means to effect his transfer to a less secure facility.  The Privacy Act is not a means to challenge the opinions or judgments of the agency.  Rather, the Act "is intended to remedy 'factual or historical errors,' and is not a vehicle for addressing 'the judgments of federal officials . . . reflected in records maintained by federal agencies.'"  *Velikonja v. Mueller*, 362 F. Supp. 2d 1, 16 (D.D.C. 2004) (quoting *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992)), *aff'd*, 466 F.3d 122 (D.C. Cir. 2006) (per curiam).  Plaintiff cannot force the BOP to change his custody classification, security level, or facility designation by means of this Privacy Act suit.  *See Conklin v. Bureau of Prisons*, 514 F. Supp. 2d 1, 6 (D.D.C. 2007) (concluding that plaintiff's "custody classification reflects the judgment of the BOP staff, and, therefore, is not subject to amendment under the Privacy Act"); *Molzen v. Bureau of Prisons*, No. 05-2360, 2007 WL 779059, at *7 (D.D.C. Mar. 8, 2007) (concluding that a Privacy Act lawsuit is not a means to force BOP to amend its decisions "with respect to [plaintiff's] custody classification and security level based on information contained in the PSR").

Furthermore, the BOP has established that its decision to transfer Plaintiff to ADX is warranted.  While in the BOP's custody, Plaintiff conspired to murder a witness, participated in

---

[6]       Plaintiff sought an opportunity to conduct discovery in order to determine "which system of records are being used" by the BOP.  Response to Defendants['] Statement of Undisputed Facts [#17] ¶ 5.  Apparently because "the BOP maintains different systems of records," *id.*, Plaintiff doubted that the Inmate Central Records System is the only system of records at issue here.  Plaintiff's papers, however, have referred only to his inmate file or prison records.  *See, e.g.,* Compl. at 2; Amd. Compl. ¶¶ 3, 5-6.  Plaintiff has not shown that discovery would be necessary to identify "facts essential to justify [his] opposition," Fed. R. Civ. P. 56(f), and the Court has denied Plaintiff's motion to hold Defendants' motion in abeyance [#23].

planning the attempted murder of a second individual, urged one inmate to assault another inmate in retaliation for the victim's cooperation with the government in Plaintiff's trial, threatened the prosecutor and sent threatening communications from prison in violation of a court order.  Plaintiff thus has proven the need for "an uncommon level of security and monitoring."  Montoya Decl. ¶ 4.

## III.  CONCLUSION

The Court concludes that Plaintiff's Privacy Act claims fail.  The BOP records which Plaintiff contends are false or inaccurate are maintained in the Inmate Central Records System, which by regulation is exempt from the Privacy Act's amendment, accuracy, and civil damages provisions.  Accordingly, Defendants' motion to dismiss or, in the alternative, for summary judgment will be granted.  A memorializing Order accompanies this Memorandum Opinion.


DATE:  March 10, 2009                    _____/s/_____
                                                          ROSEMARY M. COLLYER
                                                          United States District Judge